[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13860
Non-Argument Calendar
_____

Agency No. A206-798-858

NANCY RODRIGUEZ-CONTRERA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 15, 2020)

Before WILSON, LAGOA, and ANDERSON Circuit Judges.

PER CURIAM:

Petitioner Nancy Rodriguez-Contreras ("Rodriguez-Contreras")[1] petitions this Court for review of the Board of Immigration Appeals's ("BIA") dismissal of her appeal of the Immigration Judge's ("IJ") denial of her application for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). In her petition, Rodriguez-Contreras argues that the IJ and BIA violated her due process rights by failing to consider her documentary evidence in support of her asylum application and by failing to evaluate her claims from the perspective of a child. She further challenges the IJ and BIA's findings that she is not eligible for asylum, withholding of removal, or CAT relief. After careful review and for the reasons discussed below, we deny Rodriguez-Contreras's petition.

## I.    FACTUAL AND PROCEDURAL HISTORY

On June 8, 2014, Rodriguez-Contreras, a native and citizen of El Salvador, entered the United States through Hidalgo, Texas. She was fourteen years old at the time. The United States Department of Homeland Security ("DHS") commenced removal proceedings against Rodriguez-Contreras shortly thereafter, charging Rodriguez-Contreras with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as an

---

[1] Although the case caption and Respondent's brief spell Petitioner's name as Rodriguez-Contrera, Petitioner spells her name as Rodriguez-Contreras throughout her brief. Accordingly, this opinion will use Petitioner's spelling.

alien present in the United States without being admitted or paroled by an immigration officer or who arrived in the United States at any time or place other than as designated by the Attorney General.

At a U.S. Immigration Court hearing held on December 30, 2014, Rodriguez-Contreras admitted the allegations contained in the DHS's notice to appear, conceded removability, and indicated that she would be seeking asylum and withholding of removal through the U.S. Citizenship and Immigration Services ("USCIS"). Rodriguez-Contreras then filed her form I-589 with USCIS, and, on August 18, 2015, the Immigration Court administratively closed the removal proceedings pending USCIS's decision on the application for asylum and withholding of removal. On September 30, 2015, USCIS denied Rodriguez-Contreras's application and referred the case to an IJ.

On February 7, 2018, the IJ held a hearing (the "Merits Hearing") to consider Rodriguez-Contreras's application for asylum and withholding of removal. At the Merits Hearing, the IJ considered Rodriguez-Contreras's application for asylum, withholding of removal, and protection under CAT. Rodriguez-Contreras claimed persecution based on her membership in a particular social group of "Salvadoran children and young people attending public school in El Salvador" and based on her anti-gang political opinion. She also claimed that, if she were to be removed to El Salvador, she would be tortured with the government's acquiescence.

Rodriguez-Contreras testified that she was born in El Salvador on April 4, 2000, and her parents left to the United States in 2005. Rodriguez-Contreras and her sister remained in El Salvador, living with their aunt Ana and cousins while attending public school. In March 2014, individuals believed to be gang members called Ana's cellphone and threatened to kidnap Rodriguez-Contreras and her sister absent a payment of nine thousand dollars. Rodriguez-Contreras testified that she believed the callers would follow through on their threat and knew that her family did not have the money. She testified that she felt pressured by the threats because "you don't play around with [the gangs]" and referenced discussions with neighbors and her observations from watching the news.

About a week later, the gang members again called Ana to demand the nine thousand dollars. Rodriguez-Contreras felt even more fearful. The gang members called a third time to demand that the money be handed over. Rodriguez-Contreras and her family did not report any of these calls to the police because of their fear that the gang members would find out and their belief that the police would not be able to help. Rodriguez-Contreras was afraid that the gang would kidnap her, as her parents did not have the requested money.

After the threatening phone calls, Rodriguez-Contreras stopped attending school and went to live with her other aunt, Alba, for about two weeks. Rodriguez-Contreras then returned to live with Ana for a month before leaving to the United

States.  Her family never paid the nine thousand dollars demanded by the gang members.

Rodriguez-Contreras further testified that she never had issues or witnessed violence at her school but that she often saw gang members outside of the school. She expressed her fear that, if she returned to El Salvador, the gang members would discover her return and harm her.  She denied that she could live somewhere else in El Salvador because she "only felt right with [Ana] and [does not] want to go back to [Alba]."

Nonetheless, Rodriguez-Contreras admitted that her sister still lives with Ana in El Salvador, that the gang members have not harmed her sister, aunts, or cousins, and that Ana has not mentioned anything about the gangs to Rodriguez-Contreras. Moreover, Rodriguez-Contreras was never harmed in El Salvador.  When asked whether she feared returning to El Salvador only because of the "general criminal violence that exists due to the gangs," Rodriguez-Contreras responded, "[y]es, and also because I want to stay here with my parents."

In addition to her testimony, Rodriguez-Contreras presented articles and reports regarding gang activity and influence in El Salvador.  These articles and reports outline the extent of the violence against civilians by gangs, the fighting between gangs, and the Salvadoran government's attempts to combat gangs.

5

The IJ denied Rodriguez-Contreras's request for asylum, withholding of removal, and protection under CAT. The IJ found Rodriguez-Contreras credible but concluded that she failed to establish her eligibility for relief. The IJ noted that Rodriguez-Contreras failed to provide evidence that she suffered harm in El Salvador and, therefore, failed to establish past persecution. The IJ further found that Rodriguez-Contreras did not establish an objectively reasonable well-founded fear of future persecution because nothing happened to her sister or family who remained in El Salvador. The IJ also rejected Rodriguez-Contreras's argument that the persecution she allegedly faced was based on the two statutorily protected grounds on which she relied: membership in a particular social group and political opinion. As to political opinion, the IJ concluded that the evidence does not establish that the Salvadoran gangs are the de facto government but, even if they were, refusing to comply with their extortive demands does not constitute a political opinion. As to Rodriguez-Contreras's proposed social group, the IJ noted that "Salvadoran children and young people attending school in El Salvador" lacks sufficient particularity because it is a major segment of the population and is not a discrete group with definable boundaries. The IJ concluded that Rodriguez-Contreras "has not been persecuted because she is a child attending school in El Salvador." The IJ similarly rejected Rodriguez-Contreras's request for CAT

protection because she did not present testimony that she would be tortured by or with the acquiescence of the Salvadoran government.

Rodriguez-Contreras appealed the IJ's order to the BIA. She argued that her claims should have been analyzed from the perspective of a child and that the IJ failed to consider evidence in support of her asylum claim. She further argued that the IJ failed to properly consider her claims and made flawed findings regarding her claims of persecution and the protected grounds on which she relied. Finally, she argued that, despite a lack of supporting testimony, she was entitled to CAT protection based on the reports and articles that she submitted. She explained that, as a child, she was unable to fully express herself, but the documentary evidence proves that she would be tortured with the Salvadoran government's acquiescence if she returned to El Salvador.

On September 6, 2019, the BIA dismissed Rodriguez-Contreras's appeal of the IJ's decision. The BIA affirmed the IJ's decision and "[wrote] separately only to address [Rodriguez-Contreras]'s principal arguments on appeal." The BIA first noted that the IJ admitted all of Rodriguez-Contreras's proffered evidence and did not restrict her ability to present her claims. As such, the BIA concluded that the IJ's decision reflects his reasoned consideration of the documentary evidence presented. The BIA also rejected Rodriguez-Contreras's argument that the IJ erred by not using child-specific considerations, noting that the IJ considered her age and

7

whether she was persecuted based on her status as a child. The BIA found "no indication in the record that the Immigration Judge did not take into account the 'cumulative nature' of the respondent's fear of future persecution."

The BIA then considered Rodriguez-Contreras's claim that she presented evidence proving that she was persecuted and reasonably feared persecution because of her membership in a particular social group and her political opinion. The BIA assumed that Rodriguez-Contreras articulated a valid particular social group but upheld the IJ's determination that she did not establish a nexus between persecution and her membership in that group. The BIA found that the gang members were motivated by increasing the size and influence of their gang. Therefore, the BIA determined that Rodriguez-Contreras's fear of criminal gang violence does not provide a legal basis for asylum. As to her political opinion argument, the BIA found that her resistance to gang recruitment and extortion did not demonstrate a political motive.

Last, the BIA rejected Rodriguez-Contreras's argument for CAT protection. The BIA found that Rodriguez-Contreras did not demonstrate how her age adversely impacted her ability to present her case, particularly noting that she was represented by counsel during the Merits Hearing. In considering the documentary evidence showing gang conditions in El Salvador, the BIA concluded that such information does not demonstrate a likelihood that Rodriguez-Contreras, specifically, would be

8

tortured by the gangs with the willful blindness of the Salvadoran government. Rodriguez-Contreras challenges the BIA's decision.

## II.    STANDARD OF REVIEW

"[W]e review only the decision of the BIA, except to the extent that the BIA expressly adopts the IJ's decision." *Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1275 (11th Cir. 2009) (quoting *Rodriguez Morales v. U.S. Atty Gen.*, 488 F.3d 884, 890 (11th Cir. 2007)).

We review *de novo* the conclusions of law by the BIA and IJ, but we defer to the BIA's interpretation of the applicable statutes "if that interpretation is reasonable." *Perlera-Escobar v. Exec. Office for Immigration*, 894 F.2d 1292, 1296 (11th Cir. 1990)).    We review their factual findings, including credibility determinations, under the substantial evidence test.  *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1230–31 (11th Cir. 2006).  "We must affirm the decision of the Immigration Judge if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'"  *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006) (quoting *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005)).  We "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Silva*, 448 F.3d at 1236.

## III.    ANALYSIS

In her petition, Rodriguez-Contreras argues that the denial of her application for asylum was erroneous for several reasons. First, she contends that she was deprived of due process of law in her removal proceedings because the IJ did not consider her asylum application using a child-specific perspective and because the IJ did not consider her proffered documentary evidence. Second, she argues that the agency's findings on her eligibility for asylum, withholding of removal, and CAT relief were in error because the IJ failed to consider her claims for relief, failed to make reasoned findings, and ignored certain evidence.

Because the BIA affirmed and relied on the IJ's findings and wrote separately only to address Rodriguez-Contreras's principal arguments to the BIA, we look to both the IJ's order denying relief and the BIA's order dismissing Rodriguez-Contreras's administrative appeal in our analysis of the issues she raises in her petition. *See Tang*, 578 F.3d at 1275.

### A. Due Process Concerns

Rodriguez-Contreras claims that the IJ and BIA violated her right to due process of law in her removal proceedings. The Fifth Amendment entitles aliens in removal proceedings to due process of the law. *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010). "Due process requires that aliens be given notice and an opportunity to be heard in their removal proceedings." *Id.* A petitioner claiming

10

a due process violation "must show that she was deprived of liberty without due process of law and that the purported errors caused her substantial prejudice." *Id.* A petitioner shows substantial prejudice by demonstrating that, absent the alleged violations, the outcome of the removal proceedings would have been different. *Id.*

    1. Child-Specific Considerations

First, Rodriguez-Contreras claims that her due process rights were violated because the IJ did not use "child-specific considerations" when deciding her asylum application. In support of her argument, Rodriguez-Contreras cites to cases and asylum guidelines for the proposition that a child's asylum application must be analyzed differently than an adult's asylum application. *See, e.g.*, *Kholyavskiy v. Mukasey*, 540 F.3d 555, 569–70 (7th Cir. 2008) (suggesting that age may bear heavily on an applicant's claims of past persecution and well-founded fear of future persecution). She also relies on cases suggesting that the agency must consider evidence in a child's asylum proceeding using a "child-sensitive approach" outlined in guidelines by DHS and the United Nations High Commissioner for Refugees. *See Mejilla-Romero v. Holder*, 614 F.3d 572, 572–73 (1st Cir. 2010). As such, she asserts that, because child-specific considerations "must be applied to all elements of the child's asylum claim," the IJ erred by failing to evaluate her claims from a child's perspective. Specifically, she argues that the IJ should have considered her age in determining whether her experiences constitute persecution and that her youth

11

required the IJ to better consider the documentary evidence on conditions in El Salvador, as children may be unable to understand and explain country conditions or comprehend their danger and vulnerability.

Based on our review of the record and the agency's decisions, however, we find no indication that the IJ or BIA ignored Rodriguez-Contreras's age in considering her asylum application. Indeed, the IJ took note of Rodriguez-Contreras's age during all of the events in question and considered her testimony regarding the phone calls, the fear she felt in El Salvador during that time period, and her current fear of returning to her neighborhood in El Salvador. The IJ also specifically noted that she was credible. The IJ's decision turned on whether Rodriguez-Contreras suffered extreme, continued harassment while in El Salvador and whether she had an objectively reasonable well-founded fear of future persecution if she returns. Even if the IJ had found that Rodriguez-Contreras felt even more fear, suffered more trauma, and was in greater danger than she was able to articulate, this would not change the denial of her asylum application. As discussed below, the IJ and BIA correctly found that Rodriguez-Contreras failed to establish that the persecution she fears is on account of a political opinion or membership in a particular social group. Thus, we reject her due process argument because she has failed to show that the result of her removal proceedings would have been different had the IJ found that she had been subject to, or reasonably feared,

persecution based on her child-specific perspective.  *Cf. Lapaix*, 605 F.3d at 1143–44.

### 2.  Reasoned Consideration of Documentary Evidence

Second, Rodriguez-Contreras argues that the IJ selectively considered evidence and ignored the documentary evidence she provided that showed gangs are considered the de facto authority in many areas within El Salvador.  According to Rodriguez-Contreras, the IJ only considered a State Department report and should have instead relied on the various articles and other reports she submitted.  She claims that, considering the record as a whole, the IJ should have made findings on whether gangs are the de facto government in the areas where she lived and went to school.

"When assessing whether a decision displays reasoned consideration, we look only to ensure that the IJ and the BIA considered the issues raised and announced their decisions in terms sufficient to enable review."  *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1302 (11th Cir. 2015).  The IJ and BIA must consider all evidence submitted, but they need not specifically address each claim or piece of evidence.  *Id.*  Therefore, "a decision that omits the discussion of certain pieces of evidence can nonetheless display reasoned consideration."  *Id.*  "We have sustained reasoned-consideration claims in three types of circumstances: when the Board 'misstates the contents of the record, fails to adequately explain its rejection of logical conclusions,

or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record.'" *Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1334 (11th Cir. 2019) (quoting *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 803 (11th Cir. 2016)). These circumstances share a common trait, i.e., that the BIA's opinion, when "read alongside the evidentiary record, forces us to doubt whether we and the [BIA] are, in substance, looking at the same case." *Id.*

Here, the IJ rejected Rodriguez-Contreras's position that gangs in El Salvador constitute the de facto government and relied on a report from the State Department. While the IJ noted in his decision that he "carefully considered" the documentary evidence submitted by Rodriguez-Contreras, she suggests this is untrue because the IJ cited only to the State Department report in his decision. Rodriguez-Contreras concedes that the IJ and BIA were justified in relying heavily on the report from the State Department but argues that the State Department report "stands in stark contrast to" her other documentary evidence. She believes the latter category of documentary evidence should control.

However, our review in this scenario is limited to ensuring that the IJ and the BIA considered the arguments and evidence presented and rendered a reasoned consideration. *See Indrawati*, 779 F.3d at 1302. We conclude that the IJ's decision reflects reasoned consideration. Here, the IJ made specific findings on the issue and noted what he reviewed in making his decision. Additionally, the transcript of the

14

Merits Hearing shows that the IJ asked Rodriguez-Contreras's counsel to direct him to specific pages of the other documentary evidence she presented. Indeed, the IJ's order specifically addressed one of the articles alleged by Rodriguez-Contreras to have been ignored and then disagreed with its conclusion. We cannot, therefore, conclude that the IJ ignored evidence simply because Rodriguez-Contreras claims her other documentary evidence is more accurate than the State Department report. Accordingly, we reject this argument.

B. Asylum and Withholding of Removal

As to her application for asylum and withholding of removal, Rodriguez-Contreras contends that the IJ did not give reasoned consideration to her claims of persecution. She also claims that the IJ erred by rejecting her proposed particular social group of "Salvadoran children and young people attending public school in El Salvador" and by rejecting her claim that she holds an imputed political opinion because she resisted gang recruitment and extortion demands. Finally, she argues that she provided substantial evidence to show that she faces persecution *because of* her membership in that social group and her political opinion.

1. Framework for Asylum and Withholding of Removal Under the INA

The Attorney General or the Secretary of Homeland Security may grant asylum to an alien who meets the INA's definition of a "refugee." 8 U.S.C. § 1158(b)(1)(A). "Refugee" is defined, in relevant part, as:

15

any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

*Id.* § 1101(a)(42)(A). The applicant bears the burden of proving that he or she is a refugee. *Id.* § 1158(b)(1)(B)(i). The applicant must therefore demonstrate with specific and credible evidence that he or she (1) was persecuted in the past on account of a statutorily protected ground or (2) has a "well-founded fear" that he or she will be persecuted in the future on account of that statutorily protected ground. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006) (quoting 8 C.F.R. § 208.13).

This Court recognizes that "[p]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." *Silva*, 448 F.3d at 1237 (quoting *Sepulveda*, 401 F.3d at 1231). For example, in *Sepulveda*, we found that a series of phone calls threatening the applicant's life and directing her to stop organizing peace demonstrations did not "rise to the level of past persecution that would compel reversal of the IJ's decision." *Sepulveda*, 401 F.3d at 1231. Similarly, in *Silva*, we held that a terrorist organization's "condolence note" intimating the applicant's own forthcoming death, along with anonymous

16

threatening phone calls, was an example of harassment and intimidation not persecution. *Silva*, 448 F.3d at 1237.

To demonstrate a well-founded fear of persecution, there must also be a "reasonable possibility" of future persecution in the applicant's country of nationality based on a protected ground. 8 C.F.R. § 208.13(b)(2)(i); *accord Mehmeti v. U.S. Att'y Gen.*, 572 F.3d 1196, 1200 (11th Cir. 2009). An asylum applicant bears the burden of showing that the fear is both subjectively genuine and objectively reasonable. Ruiz, 440 F.3d at 1257. Additionally, "if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality" and "it would be reasonable to expect the applicant to do so," the applicant does not have a well-founded fear of persecution. 8 C.F.R. § 208.13(b)(2)(ii).

Moreover, an asylum applicant must show that the past persecution or well-founded fear of future persecution is based on a protected ground, i.e., "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The applicant must set forth specific, detailed facts "showing a good reason to fear that he or she will be *singled out* for persecution on account of" such protected ground. *Mehmeti*, 572 F.3d at 1200 (emphasis in original) (quoting *Sepulveda*, 401 F. 3d at 1231). In other words, the applicant must establish a nexus between the persecution and the protected ground. *Id.* Notably, evidence demonstrating acts of private violence or that a person has been the victim

17

of criminal activity does not constitute evidence of persecution based on a protected ground. *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1310 (11th Cir. 2013). Applicants are not entitled to asylum because they fear the "general danger that inevitably accompanies political ferment and factional strife." *Mazariegos v. U.S. Att'y Gen.*, 241 F.3d 1320, 1328 (11th Cir. 2001) (quoting *Huaman-Cornelio v. Board of Immigration Appeals*, 979 F.2d 995, 1000 (4th Cir. 1992)).

To qualify for withholding of removal under the INA, an alien must show that, if removed to a country, "the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A).  The alien must demonstrate that he or she "would 'more likely than not' be threatened or persecuted" if returned to the country of removal. *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 819 (11th Cir. 2004) (quoting *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003)).  "This standard is more stringent than the 'well-founded fear' standard for asylum." *Id.*  If an alien is unable to meet the "well-founded fear" standard of proof for asylum, he or she cannot meet the more stringent standard for withholding of removal. *See id.*

2. Past Persecution and Well-Founded Fear of Future Persecution

Rodriguez-Contreras argues that the IJ did not give reasoned consideration to her claims of past persecution and well-founded fear of future persecution.

18

Regarding her claim of past persecution, Rodriguez-Contreras argues that the IJ failed to consider the "cumulative nature" of her experiences with the Salvadoran gangs and, thus, erred by not concluding that she suffered past persecution. As to her claim of well-founded fear of future persecution, Rodriguez-Contreras suggests that her age made it more difficult to express her fear or realize the danger she would face if she returned to El Salvador. She also disputes the bases on which the IJ concluded that her fear was not reasonable. Specifically, she argues that the IJ should have disregarded the fact that nothing happened to her sister or extended family that remained in El Salvador and instead should have focused more on the documentary evidence showing that gangs control and influence life in El Salvador.

Based on our review of the record and the IJ's decision, we find that the IJ explicitly considered the evidence that Rodriguez-Contreras claims was ignored. In essence, her challenge is not based on what evidence the IJ considered but, rather, on how the IJ weighed that evidence. We cannot reweigh the evidence. Even if we were to consider the evidentiary sufficiency of the IJ's findings as to persecution, we conclude that those findings are based on substantial and probative evidence and that a reasonable adjudicator would not be compelled to find otherwise. In concluding that Rodriguez-Contreras failed to establish past persecution or a well-founded fear of future persecution, the IJ based his reasoning on Rodriguez-

Contreras's own testimony regarding the gang members' phone calls, her reaction, and what happened after she did not pay the demanded money.

While Rodriguez-Contreras was subjected to extortion demands, nothing ever came of those demands, and her sister, who was subject to the same demands and remained in El Salvador, was never harmed by the gang members. Moreover, her aunt, Ana, who was the direct recipient of the threats, has not mentioned the gang threats to Rodriguez-Contreras since she left El Salvador. The gang members' threats spanned only a few weeks and were not repeated thereafter. Therefore, we find that the gang members' calls do not constitute persecution but are instead an example of harassment or intimidation. *See Silva*, 448 F.3d at 1237. For the same reasons, and because Rodriguez-Contreras did not establish that she would be singled out upon her return to El Salvador,[2] we conclude that substantial evidence supports the IJ's finding that Rodriguez-Contreras failed to establish an objectively reasonable fear of future persecution. *See id.* at 1239.

3. Nexus to Protected Grounds

Even assuming Rodriguez-Contreras established past persecution or a well-founded fear of future persecution, we find that substantial evidence supports the

---

[2] Indeed, Rodriguez-Contreras's argument is based on the IJ ignoring documentary evidence regarding *general* country conditions in El Salvador. This generalized material does not show a reasonable possibility that the Salvadoran gangs would specifically target Rodriguez-Contreras.

20

IJ's findings that she failed to establish a nexus between the persecution and a protected ground. Relying on Rodriguez-Contreras's own testimony, the IJ found that the gang members' extortion attempts were motivated by their desire to increase the size and influence of their gang, not because Rodriguez-Contreras was a child going to public school or because of her purported political opinion.

Rodriguez-Contreras testified that the gang members sought only money when they made their threatening phone calls. She also testified that she did not know why the gang targeted her and her sister and not her cousin of the same age who also attended public school. She further testified that she feared returning to El Salvador because the gang members will realize that she has returned and may try to harm her. She concluded her testimony by admitting that she does not want to return to El Salvador because of her fear of the general criminal violence there, along with her desire to stay in the United States with her parents.

While Rodriguez-Contreras points to reports and articles describing country conditions in El Salvador and outlining the extent of gang violence and influence there, this documentary evidence does not compel a finding that, if she returns to El Salvador, gang members will specifically single her out "on account of" her enrollment in public school or a political opinion. In fact, this evidence supports the IJ's finding that the violence Rodriguez-Contreras fears arises from the general

criminal activity that plagues El Salvador and is not connected to Rodriguez-Contreras's membership in a social group or her political opinion.

The IJ was therefore justified, based on substantial evidence, in finding that any persecution Rodriguez-Contreras fears is not connected to a social group or a political opinion. *See Rodriguez*, 735 F.3d at 1310–11; *see also Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 438 (11th Cir. 2004) (finding that harassment arising from applicant's refusal to cooperate with terrorist organization did not establish nexus to protected ground). Because Rodriguez-Contreras did not demonstrate a nexus between her fears and a statutorily protected ground, we need not decide whether she established an imputed political opinion or determine the validity of her proffered particular social group.

C. CAT Protection

In her final point on appeal, Rodriguez-Contreras argues that the IJ's findings as to her eligibility for CAT relief are not supported by the record. She again points to articles and reports of country conditions in El Salvador and concludes that such material shows that she will more likely than not be tortured with the Salvadoran government's willful blindness if she returns to El Salvador.

Under CAT, applicants may obtain withholding of removal if they establish that it is more likely than not that they would be tortured if removed to the proposed country. 8 C.F.R. § 1208.16(c)(2). The relevant definition of torture in this case

22

requires that the pain or suffering be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* § 1208.18(a)(1).

Here, the record corroborates the BIA and IJ's finding that Rodriguez-Contreras failed to establish that she, specifically, would be subject to torture with the consent or acquiescence of the Salvadoran government. As discussed above, Rodriguez-Contreras's family in El Salvador was not harmed by the gang members despite her family's failure to make the demanded payment in 2014. Other than her general fear of gang violence in El Salvador, Rodriguez-Contreras did not articulate any specific fact from which we could conclude that she will more likely than not be subject to torture. Moreover, despite the documentary evidence discussing the gang situation in El Salvador, this evidence does not compel a finding that the government of El Salvador acquiesces in the intentional infliction of pain and suffering by the gangs. On the contrary, much of the material provided by Rodriguez-Contreras outlines the ongoing (but often unsuccessful) attempts by the El Salvadoran government to suppress the gangs' influence around the country. And, while some of the articles discuss the government's extrajudicial killing and torture of suspected gang members, this does not suggest that the government would acquiesce if the gangs sought to torture Rodriguez-Contreras.

Thus, the record is devoid of evidence suggesting that Rodriguez-Contreras would be tortured with the acquiescence of the Salvadoran government. A reasonable adjudicator would not be compelled to find otherwise. *See Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1243 (11th Cir. 2004). Accordingly, we find that Rodriguez-Contreras is not entitled to CAT relief.

## IV.    CONCLUSION

For the foregoing reasons, we deny Rodriguez-Contreras's petition for review of the BIA's order dismissing her appeal from the IJ's decision.

**PETITION DENIED.**